**MT. HAWLEY INSURANCE COMPANY, a Delaware corporation, Plaintiff,**

**v.**

**JENNY CRAIG, INC., a Delaware corporation, Sidney H. Craig, Genevieve Craig, Ronald E. Gerevas, W. James Mallen, Marvin Sears, Michael E. Tennenbaum, and Jeffrey T. Chambers, Defendants.**

Civ. A. No. 95C–04–005.

Superior Court of Delaware,
New Castle County.

Submitted: June 22, 1995.
Argued: June 27, 1995.
Decided: Sept. 19, 1995.

Allen M. Terrell, Jr., and Frederick L. Cottrell, III, of Richards, Layton & Finger, for plaintiff.

Richard H. Morse, David C. McBride, William D. Johnston, and Matthew P. Denn, of Young, Conaway, Stargatt & Taylor, for defendants.

## OPINION

HERLIHY, Judge.

Defendants Jenny Craig, Inc. [JCI], Sidney H. Craig, Genevieve Craig, Ronald E. Gerevas, W. James Mallen, Marvin Sears, Michael E. Tennenbaum and Jeffrey T. Chambers, directors of JCI, [directors] have moved to dismiss or stay this declaratory judgment action.

Plaintiff Mt. Hawley Insurance Company [Mt. Hawley] brought this action against JCI and the directors to determine whether Mt. Hawley is liable to provide coverage under a

directors and officers [D & O] policy issued to JCI.

JCI moves to dismiss on the basis that there was no ripe issue for a declaratory judgment action or that the Delaware action should be stayed pending a companion California action. The directors move to dismiss on the same basis and for a stay on the same basis. However, they have moved to dismiss on the additional basis that this Court lacks jurisdiction over them. Mt. Hawley disputes all these grounds.

## FACTS

JCI is a Delaware corporation whose principal place of business is in San Diego, California. The directors are all residents of southern California.

A group of persons or entities operating under Lloyd's of London [Lloyd's] issued a primary D & O policy to JCI providing coverage up to $5 million, with a $100,000 deductible [Lloyd's policy].[1] Mt. Hawley is a Delaware corporation whose principal place of business is in Peoria, Illinois. It provided an excess D & O policy to JCI for an additional $5 million.

JCI and the directors became involved in litigation in southern California where securities fraud allegations were made. *In re Jenny Craig Securities Litigation,* D.C.S.D.Calif., CU–92–845 [securities litigation]. That securities litigation transpired over a three-year period and generated over 200,000 pages of documents, 25 depositions and six motions for dismissal or for partial summary judgment.

During the latter part of the securities litigation, settlement negotiations took place between JCI, the directors and the plaintiffs in that litigation. Representatives of Lloyd's and counsel for Mt. Hawley were informed of these negotiations. Mt. Hawley's counsel requested and received copies of documents relating to the securities litigation.

JCI and the directors discussed with Lloyd's and Mt. Hawley their making contributions to the possible settlement pursuant to the D & O policies. In February 1995, Lloyd's agreed to pay its entire policy limits. The possible settlement was to be in the range of $9.5 million.

Mt. Hawley declined to contribute until the settlement was finalized. On March 19, 1995, the parties in the securities litigation executed a settlement agreement which provided for consummation in June 1995. Counsel for JCI and the directors sent a signed letter via facsimile on March 31, 1995 to Mt. Hawley's counsel stating:

RE: *In re Jenny Craig Securities Litigation*

Dear [Mr. O'Leary]:

Enclosed is a fully executed copy of the Settlement Agreement among the Plaintiffs, JCI and the Director Defendants. As you will see, the defendants agreed to pay $9.5 million to settle the case. The primary carrier has agreed to contribute its policy limits of $5 million dollars [sic] to pay for Covered Defense Costs and to contribute to the settlement. The Covered Defense Costs were, at the time of our agreement with the primary carrier, slightly in excess of $1.1 million, leaving $3.9 million to contribute toward the settlement. JCI is prepared to pay the entire remaining amount ($5.6 million) and litigate with Mt. Hawley. Prominent coverage counsel have been interviewed and are prepared to accept the engagement. I have been authorized by my clients and by JCI to communicate to Mt. Hawley, through you, that JCI and the Insureds are willing to settle with Mt. Hawley now, to avoid litigation, for $2.275 million, which is calculated by having the primary and the excess each pay 65% of the settlement and JCI pay 35% {$3.9 + $2.275 + $3.325 = $9.5}. If this offer is accepted JCI will absorb all additional accrued Covered Defense Costs. This offer will be withdrawn when JCI signs an engagement letter with coverage counsel—probably late next week.

Wilson letter to O'Leary (March 31, 1995).

On April 3, 1995, Mt. Hawley filed its declaratory judgment action in this Court.

---

1. This policy and Mt. Hawley's policy were originally issued to JCI Holdings, Inc., which later became Jenny Craig, Inc.

JCI and the directors, except Jeffrey Chambers, filed a declaratory judgment and breach of contract action against Mt. Hawley in the California Superior Court in San Diego County on May 1, 1995.

## DISCUSSION

### Ripeness of Declaratory Judgment

█ JCI and the directors have urged this Court to dismiss this declaratory judgment action because it was not ripe when filed.

Mt. Hawley points out that 8 *Del.C.* § 145 requires corporate directors to be indemnified and that this dispute determines how that indemnification will occur—Mt. Hawley's D & O insurance or otherwise. It also claims that there was a dispute ripe for judicial determination.

When filing its claim, Mt. Hawley invoked the Declaratory Judgment Act [Act], 10 *Del.C.* § 6501 [2], *et seq.* The Act's purpose is to provide preventive justice. *Hampson v. State,* Del.Supr., 233 A.2d 155, 156 (1967). The Act is to receive liberal construction. *Stabler v. Ramsay,* Del.Supr., 88 A.2d 546, 551 (1952). Real and adverse interests must be present. *Wilmington Trust Co. v. Barron,* Del.Supr., 470 A.2d 257, 262 (1983).

Prior to 1981, the Act specified that there be an "actual controversy". 10 *Del.C.* § 6501. It was amended in 1981 and those words were deleted. However, criteria of an "actual controversy" established by case law prior to the amendment remain relevant. *Schick, Inc. v. Amalgamated Clothing and Textile Workers Union,* Del.Ch., 533 A.2d 1235, 1238 (1987). Those criteria are that the controversy must (1) involve the rights of other legal relations of the party seeking declaratory relief, (2) be one in which the claim or right or other legal interest is asserted against one who has an interest in contesting the claim, (3) be between the parties whose interests are real and adverse, and (4) be ripe for judicial determination. *Rollins International, Inc. v. International Hydronics Corp.,* Del.Supr., 303 A.2d 660, 662–63 (1973).

It is undisputed that the first three criteria exist. Mt. Hawley had an insurance contract with JCI. This action, if it proceeds, will determine whether the obligations of that contract will be fulfilled. As such, it involves a right and a legal relation to JCI. As the other party to the D & O insurance contract, JCI has a direct interest in contesting this action. JCI might be liable if Mt. Hawley does not have to pay coverage. Whether or not the obligation of a multi-million dollar contract ought or need to be fulfilled between the parties to that contract, that obligation represents interests that are real and adverse.[3]

JCI argues that Mt. Hawley's action fails the fourth test, that of ripeness.

[I]n deciding whether a particular declaratory judgment action is ripe for judicial determination, a practical evaluation of the legitimate interest of the plaintiff in a prompt resolution of the question presented and the hardship that further delay may threaten is a major concern. Other necessary considerations include the prospect of future factual development that might affect the determination to be made; the need to conserve scarce resources; and a due respect for identifiable policies of the law touching upon the subject matter of the dispute.

*Schick, Inc.,* 533 A.2d at 1239.

The settlement agreement executed in the securities litigation is not yet a matter of record in this proceeding. What is a matter of record is that a settlement had been reached between the parties in that litigation.

---

**2.** Except where the Constitution of this State provides otherwise, courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect, and such declaration shall have the force and effect of a final judgment or decree.
10 *Del.C.* § 6501.

**3.** JCI's argument is curious because it filed a declaratory judgment action (along with a breach of contract action) but little, if anything, changed in the four weeks between the filing of this action and JCI filing its action in California.

That record appears in JCI's counsel's letter of March 31, 1995 to Mt. Hawley's counsel which says that settlement had been reached for $9.5 million. It is also undisputed that $5 million of primary coverage has been paid or committed by Lloyd's. That leaves Mt. Hawley potentially liable for several million dollars pursuant to its excess policy.

This factual posture is much stronger than those found in *Monsanto Co. v. Aetna Casualty and Surety Co.*, Del.Super., 565 A.2d 268 (1989) and *Hoechst Celanese v. National Union Ins. Co.*, Del.Super., 623 A.2d 1133 (1992). Both of those cases were insurance coverage declaratory judgment actions. In *Monsanto,* the excess carriers claimed they were under no obligation to pay because the insured had not exhausted the primary coverage. Because of the strong enough *possibility* of exhaustion of primary coverage, this Court found the declaratory action against the excess carriers to be ripe. *Monsanto,* 565 A.2d at 273.

The Court in *Hoechst* noted the strong enough *possibility* that primary coverage would be exhausted, even though it had not yet been, and found the insured's declaratory judgment action ripe. *Hoechst,* 623 A.2d at 1139–40. Compare *Playtex Family Products v. St. Paul Surplus,* Del.Super., 564 A.2d 681 (1989) (holding that awards of punitive damages in toxic shock syndrome causes being speculative, none had been awarded, and consequent thorny, unresolved problems of choice of law issues made a declaratory judgment action involving coverage of punitive damages not ripe).

In this case, primary coverage has been exhausted or committed. Clearly, this action is ripe. *See Rhone–Poulenc v. American Motorists Ins. Co.,* Del.Supr., 616 A.2d 1192, 1195 (1992).

### Jurisdiction Over Directors

■ Having determined that this declaratory judgment action is ripe, the next issue is whether this Court has jurisdiction over the directors, all nonresidents. Mt. Hawley served the directors pursuant to 10 *Del.C.* § 3114. That is the only statutory basis it invokes to obtain jurisdiction over them.

Every nonresident of this State who after September 1, 1977, accepts election or appointment as a director, trustee or member of the governing body of a corporation organized under the laws of this State or who after June 30, 1978, serves in such capacity ... shall, by such acceptance or by such service, be deemed thereby to have consented to the appointment of the registered agent of such corporation ... as his agent upon whom service of process may be made in all civil actions or proceedings brought in this State, by or on behalf of, or against such corporation, in which such director, trustee or member is a necessary or proper party, or in any action or proceeding against such director, trustee or member for violation of his duty in such capacity, whether or not he continues to serve as such director, trustee or member at the time suit is commenced.

10 *Del.C.* § 3114(a).

Mt. Hawley contends that the directors have made demands of it for payment under its policy. Thus, it argues they are necessary parties. The difficulty with that argument is that none of the directors are insureds.[4] Only JCI is. If Mt. Hawley does not pay (or does not have to pay) anything towards the settlement, the dispute over who else pays is of no concern to Mt. Hawley. Even if the directors are necessary parties to this litigation, that fact does not convert into granting to this Court jurisdiction over them.

There are two analytical avenues that must be traveled to determine whether this Court can exercise jurisdiction over the directors. One is constitutional, namely, fairness and substantial justice. *In re USACafes, L.P. Litigation,* Del.Ch., 600 A.2d 43, 50 (1991). The other is statutory and involves § 3114. *USACafes,* 600 A.2d at 52. This Court's analysis of the statutory basis for exercising jurisdiction makes it unnecessary to engage in a constitutional analysis.[5]

4. They are plaintiffs in the companion California litigation.

5. The constitutional analysis would reach the same result as the statutory analysis.

In upholding the constitutional use of § 3114 to obtain jurisdiction over nonresident corporate directors in *Armstrong v. Pomerance,* Del.Supr., 423 A.2d 174 (1980), the Court noted the reasonableness of such usage in actions alleging breach of directors' fiduciary obligations to their corporations. *Id.* at 176. The Supreme Court also stated that Delaware has "significant and substantial interest" in overseeing the conduct of corporate directors of Delaware corporations. *Id.* at 177.

Mt. Hawley argues that Delaware has a "huge" and "demonstrable" interest in making sure the corporate obligation for indemnification under 8 *Del.C.* § 145 is fulfilled. That argument is creative but specious. Delaware does have such an interest but Mt. Hawley is not the guardian of that interest. Besides, it is disclaiming liability of an indemnification policy.

It is established precedent that jurisdiction under § 3114 over a non-resident director can only be accomplished when the dispute involves the rights, duties and obligations which directors owe to their service to the corporation, that is, actions against directors involving allegations of breaches of fiduciary duties they owe to their corporations. *Hana Ranch v. Lent,* Del.Ch., 424 A.2d 28, 30 (1980); *Armstrong,* 423 A.2d at 176; *Prudential–Bache v. Franz Manufacturing Co.,* Del.Super., 531 A.2d 953 (1987). While there is some concern with this limiting interpretation of § 3114, *USACafes,* 600 A.2d at 53, the interpretation has been accepted. *Id.*

This dispute boils down to whether Mt. Hawley will be required to fulfill its insurance contract with JCI. The contract was not executed in Delaware and for reasons which will be discussed below, probably will not be interpreted under Delaware law. Delaware does not have a substantial interest in this contract dispute to the degree that it can exercise jurisdiction over the directors. *Pestolite, Inc. v. Cordura Corp.,* Del.Super., 449 A.2d 263 (1982). Further, Mt. Hawley has not alleged any breach of the directors' fiduciary duties to JCI and certainly has not established that *it* has any standing to litigate such a breach, if any existed.

Accordingly, the directors' motion to dismiss for lack of jurisdiction will be **GRANTED.**

### Forum Non Conveniens

 The remaining issue is whether this matter, now only involving JCI, should be dismissed or stayed for reasons of *forum non conveniens.* A motion to dismiss or stay on such grounds is addressed to the sound discretion of the Court. *Texas City Refining, Inc. v. Grand Bahama Petroleum Co., Ltd.,* Del.Supr., 347 A.2d 657, 658 (1975).

 There is a pending, but subsequently filed, companion action in California. When a defendant such as JCI moves to dismiss or stay the action in this state on *forum non conveniens* grounds where it has later filed an action in another jurisdiction, that defendant has the burden of showing inconvenience and hardship sufficient to convince this Court to divest itself or to delay the exercise of its jurisdiction. *ANR Pipeline Co. v. Shell Oil Co.,* Del.Supr., 525 A.2d 991, 992 (1987). This burden of proof is within the confines of the traditional factors of *forum non conveniens. Williams Gas Supply Co. v. Apache Corp.,* Del.Supr., 594 A.2d 34, 37 (1991).

 The traditional factors to be considered are (1) the applicability of Delaware law, (2) the relative ease of access to proof, (3) the availability of compulsory process for witnesses, (4) the possibility of the view of the premises, if appropriate, (5) the pendency or non-pendency of a similar action or action in another jurisdiction, and (6) all other practical consideration which would make the trial easy, expeditious and inexpensive. *General Foods Corp. v. Cryo–Maid, Inc.,* Del. Supr., 198 A.2d 681, 684 (1964); *Parvin v. Kaufmann,* Del.Supr., 236 A.2d 425, 427 (1967).

### Applicability of Delaware Law

JCI argues that California law applies to the issues between it and Mt. Hawley. It has supplied an affidavit that the operable policy was purchased in San Diego, California. While not specifically arguing that Delaware law applies, Mt. Hawley argues that its denial of coverage decision occurred in

Illinois. It also refines its argument about why Delaware has jurisdiction over the directors by contending Delaware has an interest in the fulfillment of the indemnification requirements and the directors duty to not waste corporate assets.

It is ironic that Mt. Hawley makes this latter argument in the light of its denial of coverage. Mt. Hawley's argument here is a non-sequitur. It is still not the guardian of the directors' fiduciary duties.

While Delaware law may not apply, it is not unusual for Delaware courts to interpret another jurisdiction's laws. *Monsanto Co. v. Aetna Casualty and Surety Co.*, Del.Super., 559 A.2d 1301, 1305 (1988); *see, e.g., Monsanto Co. v. C.E.Heath Compensation & Liability Ins. Co.*, Del.Supr., 652 A.2d 30 (1994); *Monsanto Co. v. International Insurance Co. (EIL)*, Del.Supr., 652 A.2d 36 (1994). Further, there is no indication whatsoever that there are cutting edge or unsettled issues of law from California or any other non-Delaware jurisdiction whose law might be applied. Compare *Kolber v. Holyoke Shares, Inc.*, Del.Supr., 213 A.2d 444, 446 (1965).

Even though Delaware may not apply and California law could, this Court does not find this means JCI has shown hardship and inconvenience.

### Ease of and Access to Proof

The parties differ significantly over this factor. JCI contends over 200,000 documents and thousands of pages of deposition transcripts will be needed. Mt. Hawley argues that the only relevant information to its disclaimer of coverage is the information it received from JCI. It has a number of documents, but does not specify how many, and argues far fewer are needed for this litigation than JCI claims.

The record before the Court is sparse on this factor. It is unclear that Mt. Hawley decided to disclaim solely on *papers* JCI submitted to it. If it did, those papers can be readily identified and authenticated for trial purposes through minimal pretrial discovery procedures. If there were conversations between representatives of JCI and Mt.

Hawley, witnesses who may be on the West Coast are implicated.

In any event, based on the record as it exists now, the Court is not convinced that JCI needs all the documents it contends. The issue is the reasonableness and correctness of Mt. Hawley's decision based on the information JCI gave to it. JCI has not met its burden on this *forum* criterion.

■ A moving party on a *forum non conveniens* motion must identify the inconvenienced witnesses and the substance of their testimony. *Monsanto*, 559 A.2d at 1308. This Court should also consider if another forum would provide a substantial improvement as to the number of witnesses who would be subject to compulsory process. *Id.* at 1307–08.

■ JCI had identified six potential witnesses it contends it needs for this litigation. All are lawyers in California. One lawyer was Mt. Hawley's counsel who was kept informed of the securities litigation and settlement negotiations. Obviously, that witness is not of concern to this point of the analysis.

The five remaining lawyer/witnesses are subject to compulsory process in California but not in Delaware. They are not JCI employees or subject to its control. JCI says they participated in the settlement of the securities litigation. The record is somewhat vague about why all five would be needed and how much they could offer, particularly if they possessed information not shared with Mt. Hawley prior to its disclaimer. It is also unknown how much of a role their thought processes played vis-a-vis, the documents supplied to Mt. Hawley.

While these five witnesses are not subject to compulsory process in Delaware, video or other trial depositions can be taken. *Cf. States Marine Lines v. Domingo*, Del.Supr., 269 A.2d 223, 226 (1970) (witnesses in Philippines). Mt. Hawley will have to undertake discovery of these witnesses in California and by filing its action here, it has assumed that expense and effort.

On balance, this factor tips in JCI's favor but in the context of all other factors and JCI's burden it is insufficient to prompt this Court to stay or dismiss this action.

*View of Premises*

As there is no premises to view, this factor is irrelevant to the analysis of this motion.

*Pendency of Similar Action*

There is a companion action pending in the Superior Court of California which involves the same parties. There is no dispute that California has and can obtain jurisdiction over Mt. Hawley.

The California action was filed four weeks after the Delaware action. Thus, we do not have the virtual race to two different courthouses faced in *Texas Instruments, Inc. v. Cyrix Corp.,* Del.Ch., C.A.No. 13288, Jacobs, V.C., 1994 WL 96983 (March 22, 1994), where actions were filed hours apart on the same day. Since JCI's California action was subsequently filed, this Court must be satisfied in order to dismiss or stay the Delaware action that JCI has met its burden of showing inconvenience and hardship. *ANR Pipeline,* 525 A.2d at 992.

The record indicates that much of the evidence in the coverage litigation, be it in California or Delaware, is in written form. Mt. Hawley representatives received those documents in Peoria. Copies have been forwarded to Delaware counsel. There is minimal inconvenience to JCI by use of those documents in Delaware versus California.

JCI's argument is more persuasive that its California witnesses are not as inconvenienced by appearing there as they would be here. Based on the dollar claim, only five witnesses who do not necessarily have to appear at trial and with respect to Mt. Hawley's action first filed here, this Court finds JCI has not satisfied its burden to the degree that this Court should delay or divest itself of the pending action.

*Other Factors*

The final factor, other practical considerations, is not viewed as raising other issues not previously discussed. In this Court's discretion and weighing hardship and inconvenience with all the factors of *forum non conveniens,* the motion of JCI does not prompt this Court to stay or dismiss the action of Mt. Hawley.

*CONCLUSION*

For the reasons stated herein, the motion to dismiss for lack of jurisdiction of defendant directors Sidney H. Craig, Genevieve Craig, Ronald E. Gerevas, W. James Mallen, Marvin Sears, Michael E. Tennenbaum and Jeffrey T. Chambers is **GRANTED**. The motion of defendant Jenny Craig, Inc. to dismiss or stay is **DENIED**.