**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| ROD JARDINE, derivatively, on behalf of HEALTHBOOKPLUS HOLDINGS, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2023-0672-KSJM |
| CHRISTOPHER TURNER, PANOS SECHOPOULOUS, AND STATHIS TOPOUZOGLOU, | ) ) ) ) ) | |
| Defendants, and | ) ) | |
| HEALTHBOOKPLUS HOLDINGS INC., | ) ) ) | |
| Nominal Defendant. | ) | |

**ORDER GRANTING STAY OF PROCEEDINGS**

1.　HealthBrookPlus Holdings, Inc. ("HB+") is a start-up health technology company. Its "product is an early identification and guided health platform for individuals and their families that provides the user with immediate and personalized health solutions based on the individuals' needs."[1] The three current members of the HB+ Board of Directors are Defendants Christopher Turner, Panos Sechopoulous, and Stathis Topouzoglou (the "Director Defendants"). Each Director is a founder of HB+.

---

[1] The factual background is drawn from the Verified Derivative Complaint. *See* C.A. 2023-0672-KSJM, Docket ("Dkt.") 1 ("Compl.") ¶ 9.

1

2. Plaintiff Rod Jardine is a current stockholder, former chief technology officer, and former director of HB+. In addition, Jardine owns Agile CxO LLC ("Agile"). On January 9, 2022, HB+ and Agile entered into a contractor agreement where Agile would provide management consulting services to HB+.

3. HB+ is in its pre-revenue phase. As such, it relies heavily on its sales pipeline projections to raise funds. Turner was in charge of sales pitches and product sales. Jardine assisted Turner with these duties. In November 2022, Jardine observed that the sales pipeline numbers that Turner was using in his investor pitches were different from HB+'s internal numbers. Jardine's complaint gives three specific examples of these discrepancies.

4. In February 2023, in anticipation of a meeting with investors, Turner sent Jardine a "Business Plan Presentation." Jardine realized certain information in the Business Plan Presentation was incorrect and revised it. Turner rejected Jardine's edits. Jardine called Turner and Sechopoulous and told them the information in the presentation was incorrect.

5. In March 2023, Jardine met with Topouzoglou to discuss the incorrect information that was shared to investors and potential investors. Topouzoglou informed Jardine that he would schedule a meeting of the founders. Instead of a meeting, on March 21, 2023, Turner told Jardine that HB+ was terminating all of its agreements with Agile. On April 12, 2023, HB+ informed Jardine that he had been terminated as an officer and director of HB+ as well.

6.      In addition to allegedly misleading investors and potential investors, Jardine claims that Turner used corporate assets to fund personal trips.  Specifically, Jardine claims that Turner traveled to Maui, Hawaii at HB+'s expense to visit his girlfriend, although Turner had told Jardine it was to meet with Maui Health's CEO. Additionally, Jardine alleges that Turner and Sechopoulous both used a rental property in Maui that was either paid for or reimbursed by HB+.

7.      After HB+ terminated Jardine and Agile, litigation ensued.  On April 13, 2023, HB+ filed a lawsuit against Jardine in Colorado federal court alleging fraudulent inducement, misappropriation of trade secrets, civil theft, and violation of the federal computer fraud and abuse act.[2]  On June 13, 2023, Agile filed an arbitration action in California asserting breach of contract.[3]  On June 29, 2023, Jardine filed this action asserting derivative claims against the Director Defendants.[4]

8.      In this action, Jardine asserts three Counts derivatively.

- In Count I, for breach of the fiduciary duty of loyalty against the Director Defendants, Jardine advances three theories.  First, Jardine claims that "Turner and Sechopoulous breached their fiduciary duty of loyalty by engaging in an illegal scheme to violate federal and state law by intentionally causing [HB+] to make false or misleading representations during communications with potential investors and solicitations of investors, such that expose[d] [HB+] to serious legal liabilities and reputational harm."[5]  Second, Jardine claims that Turner breached his duty of loyalty by engaging in waste of HB+'s assets for his personal leisure and entertainment.[6]  Third, Jardine claims that Turner,

---

[2] Dkt. 16 ("Defs.' Opening Br."), Ex. 1.

[3] *Id.*, Ex. 3.

[4] Dkt. 1.

[5] Compl. ¶ 103.

[6] *Id.* ¶ 104.

3

Sechopoulous, and Topouzoglou breached their duty of loyalty by (a) terminating Jardine as CTO in a retaliatory manner, (b) breaching HB+'s contract with Agile, (c) permitting Turner to waste corporate assets, and (d) failing to follow corporate formalities.[7]

- In Count II, for breach of the fiduciary duty of care against Turner and Sechopoulous, Jardine alleges Turner and Sechopoulous were "at least grossly negligent in causing [HB+] to make false and misleading representations during [their] communications with prospective investors."[8] And both "acted grossly negligent[] by failing to make sure the represented financial information of [HB+] was correct[.]"[9]

- In Count III, for waste of corporate assets against Turner and Sechopoulous, Jardine alleges that Turner spent HB+ money flying to Hawaii, California, and New York for non-HB+ related purposes. And that Sechopoulous contributed to this misuse by living at a property in Maui that Turner rented with HB+ money and that had no business purpose.[10]

9. The Director Defendants have moved to dismiss or stay this action. Their lead argument is that the court should stay or dismiss this action in favor of the Colorado and California proceedings. They also advance arguments under Court of Chancery Rules 12(b)(6) and 23.1. Because a stay of proceedings is appropriate, the court does not reach the Director Defendants' arguments under Rules 12(b)(6) or 23.1.

10. The Director Defendants rely on *McWane* to argue that a stay or dismissal is appropriate.[11] To be entitled to relief under *McWane*, a defendant must

---

[7] *Id.* ¶ 105.

[8] *Id.* ¶¶ 112–13.

[9] *Id.*

[10] *Id.* ¶ 118–19.

[11] *McWane Cast Iron Pipe Corp. v. McDowell–Wellman Eng'g Co.*, 263 A.2d 281 (Del. 1970).

4

demonstrate: (i) the existence of "a first-filed prior pending action . . . in another jurisdiction;" (ii) that the first-filed action "involves similar parties and issues;" and (iii) that "the court in the other jurisdiction is capable of rendering prompt and complete justice."[12]

11.    As to the first *McWane* element, the Director Defendants point to the Colorado and California proceedings.  The Colorado action was filed on April 13.  The California arbitration was filed on June 13.  This action was filed on June 29.  Both the Colorado and California proceedings were filed first.  Jardine argues that this sequence lacks legal relevance because the Colorado and California proceedings were filed within a few months of this action, rendering Delaware "contemporaneously filed."[13]  Generally speaking, the difference of a few hours[14] or even a few weeks[15] may turn a second-filed action into a contemporaneously filed action for the purposes of *McWane*.  But the more-than-two-month window between the Colorado action (filed April 13) and the Delaware action (filed June 29) is not contemporaneous, nor do the

---

[12] *Abraham v. D.O.C.-Del. Dep't of Corrs.*, 2008 WL 242026, at *1 (Del. Ch. Jan. 24, 2008) (quoting *Kaufman v. Kumar*, 2007 WL 1765617, at *2 (Del. Ch. 2007)).

[13] Dkt. 19 ("Pl.'s Answering Br.") at 12–13.

[14] *See, e.g.*, *BP Oil Supply Co. v. ConocoPhillips Co.*, 2010 WL 702382, at *2 (Del. Super. Feb. 25, 2010) ("Delaware courts consistently have held that where two suits are filed mere hours apart, they are considered contemporaneously filed for purposes of *forum non conveniens*." (citing cases)).

[15] *Zilberstein v. Frankenstein*, 2021 WL 5289104, at *4 (Del. Super. Nov. 12, 2021) (finding two actions filed less than two weeks apart contemporaneously filed).

5

facts here warrant finding the California and Delaware actions to be contemporaneous.[16] The first element is met.

12. As to the second *McWane* element, the Director Defendants argue that "there is sufficient overlap and privity among the parties to all of the actions" because "[a]ll three of these actions involve core allegations of a conspiracy by the Board to improperly fire Jardine (and terminate Agile's independent consulting agreement) in retaliation against him for claiming that Turner engaged in fraudulent misconduct and to cover-up the same at the Company level."[17] But the parties are different and the issues only partially overlap. The second element is not fully met.

13. The Director Defendants do not make an argument in support of the third element.[18]

14. Given the dissimilarities in the proceedings, the Colorado and California proceedings will not resolve all of the claims at issue in this litigation. The claims for breach of fiduciary duty are unique to this action. For these reasons, *McWane* is "not a perfect fit."[19]

---

[16] *Id.* (treating the first-filed and second-filed actions as contemporaneous because the first-filed action appeared anticipatory, and deeming the actions contemporaneous had the effect of discouraging a race to the courthouse); *In re Chambers Dev. Co., Inc. S'holders Litig.*, 1993 WL 179335, at *7 (Del. Ch. May 20, 1993) (noting that whether or not a federal derivative suit filed on April 14, which was later consolidated with 20 lawsuits filed between March 17 and June 29, was deemed contemporaneously filed with a Delaware state action filed on April 1, the *Cryo-Maid* factors overwhelmingly favored staying the Delaware state action).

[17] Defs.' Opening Br. at 16.

[18] *See id.* at 15–17.

[19] *Park G.P., Inc. v. CCSB Fin. Corp.*, 2020 WL 7706962, at *2 (Del. Ch. Dec. 29, 2020).

15. In the end, however, "[g]ranting a stay is a discretionary enterprise and derives from a court's inherent power to control its docket."[20] "A court may grant a stay 'on the basis of comity, efficiency, or common sense.'"[21] "A stay of any aspect of litigation shouldn't be granted automatically; it should be granted only if the opponent wouldn't be prejudiced by the delay and considerations of expense and litigation economy predominate."[22] "And when resolving whether to stay or not, the Court 'must make a particularized judgment evaluating the weight that [purported] efficiency should be afforded . . . and the significance of any risk of injury to [a party] . . . that might eventuate from a stay.'"[23]

16. There are good reasons to stay this action in favor of the Colorado and California proceedings. For one, although the parties and issues in each proceeding are not identical, they substantially overlap. The parties in all three actions are closely related. In the Colorado action, HB+ brought suit against Jardine. In the California action, Jardine's wholly owned entity Agile brought suit against HB+. And in the Delaware action, Jardine brought suit derivatively against HB+'s directors.

---

[20] *Lima USA, Inc. v. Mahfouz*, 2021 WL 5774394, at *7 (Del. Super. Aug. 31, 2021) (citing *Solow v. Aspect Res., LLC*, 46 A.3d 1074, 1075 (Del. 2012)).

[21] *LightLab Imaging, Inc. v. Axsun Techs., Inc.*, 2012 WL 1764225, at *1 (Del. Ch. May 10, 2012) (quoting *Julian v. Julian*, 2009 WL 2937121, at *8 (Del. Ch. Sept. 9, 2009)).

[22] *Lima USA*, 2021 WL 5774394, at *7 (Del. Super. Aug. 31, 2021) (citing *Schick, Inc. v. Amalgamated Clothing & Textile Workers Union*, 1987 WL 12450, at *2 (Del. Ch. June 18, 1987)).

[23] *Id.* (alterations in original) (quoting *In re McCrory Parent Corp.*, 1991 WL 137145, at *1 (Del. Ch. July 3, 1991)).

7

17. As another reason, the proceedings will involve overlapping issues. The Colorado action concerns Jardine's alleged fraudulent conduct and seeks rescission of Jardine's entire equity interest in HB+. The California action concerns HB+'s alleged breach of Agile's contract and seeks monetary relief. The Delaware action concerns HB+'s directors' fiduciary breaches and seeks monetary and to-be-determined equitable relief.

18. Whether the Director Defendants retaliated against Jardine will be at issue in all of these proceedings.[24] Here, Jardine claims in part that the Director Defendants harmed HB+ by wrongfully terminating Jardine and breaching the contract with Agile, which was "motivated by a desire to punish Jardine" for reporting Turner and Sechopoulous's misstatements and fraudulent representations.[25] Although the California and Colorado forums could find retaliation occurred without making factual findings as to an underlying wrongful fiduciary act, it is likely that the discovery and arguments made in those forums will overlap with the Delaware action. Given HB+'s allegations, and Jardine's defenses, the California and Colorado forums may make findings that would impact the Delaware action. If allowed to continue simultaneously, that might lead to an inconsistency, which this court tries to avoid.[26]

---

[24] *See* Defs.' Opening Br., Ex. 2 ¶ 2(c) (Jardine's answer and affirmative defenses to the Colorado complaint); *id.*, Ex. 3 ¶¶ 27–28 (California JAMS complaint).

[25] Compl. ¶ 104.

[26] *See Gramercy Emerging Mkts Fund v. Allied Irish Banks, p.l.c.*, 2016 WL 7494898, at *8 (Del. Ch. Dec. 30, 2016) (noting that absent a first-filed doctrine, "comity would

19. For these reasons, a stay in favor of the California and Colorado proceedings is appropriate.

20. The outcome is the same under the six-factor *Cryo-Maid* test.[27] Factors one (relative ease of access to proof) and two[28] (compulsory process) favor Colorado or California as HB+'s principal place of business is in Colorado, Jardine resides in California, Turner resides in Colorado, and Sechopoulous and Topouzoglou reside in Greece.[29] Most of the evidence and employees, who might be deposed or called to testify, are presumably located in Colorado or California, and most likely not located in Delaware. Factor three (view of the premises) is neutral. Factor four[30] (practical

---

be damaged and inconsistent judicial decisions could result"), *aff'd* 173 A.3d 1033 (Del. 2017).

[27] *Gen. Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681 (Del. 1964); *Gramercy Emerging Mkts. Fund*, 173 A.3d at 1036–07 (identifying the six *Cryo-Maid* factors as: "(1) the relative ease of access to proof; (2) the availability of compulsory process for witnesses; (3) the possibility of the view of the premises, if appropriate; (4) all other practical problems that would make the trial of the case easy, expeditious and inexpensive; (5) whether or not the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction; and (6) the pendency or nonpendency of a similar action in another jurisdiction." (cleaned up)).

[28] *Mt. Hawley Ins. Co. v. Jenny Craig, Inc.*, 668 A.2d 763, 769 (Del. Super. 1995) (stating that under the second factor, the court evaluates whether "another forum would provide a substantial improvement as to the number of witnesses who would be subject to compulsory process" (citation omitted)).

[29] As Jardine notes, this court can compel the presence of the Director Defendants, but presumably this action will involve third-party witnesses most likely located in either Colorado or California.

[30] *Martinez v. E.I. DuPont de Nemours & Co., Inc.*, 86 A.3d 1102, 1104 (Del. 2014) (stating that under the fourth factor, the court examines "all other practical problems that would make the trial of the case easy, expeditious and inexpensive" (citation omitted)).

9

problems) favors Colorado or California because, as with factors one and two, presumably all the evidence and employees with relative knowledge are located in those states, and not in Delaware. Factor five (application of Delaware law) favors Delaware as Delaware law applies. Factor six (pendency or nonpendency of similar action) favors California or Colorado as similar actions were filed in those states before the Delaware action was filed. In sum, factors one, two, four, and six favor either California or Colorado. Factor five favors Delaware, and factor three is neutral. On balance, a stay is warranted in favor of the California and Colorado proceedings.

21. Counsel shall send quarterly reports on the status of the litigation in California and Colorado. In the meantime, Jardine may seek leave to lift the stay if events in the parallel proceedings warrant. In all events, the parties shall update the court of the status of the parallel proceedings at the end of each quarter, with the first report to be filed at the end of September.

*/s/ Kathaleen St. J. McCormick*

Chancellor Kathaleen St. J. McCormick
Dated: April 25, 2024
