# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| ARROWOOD INDEMNITY COMPANY,<br><br>        Plaintiff,<br><br>        v.<br><br>AMERISOURCEBERGEN CORPORATION AND AMERISOURCEBERGEN DRUG CORPORATION, et al.<br><br>        Defendants. | C.A. No. N22C-01-182 AML (CCLD) |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,<br><br>        Plaintiff,<br><br>        v.<br><br>AMERISOURCEBERGEN CORPORATION, et al.<br><br>        Defendants. | C.A. No. N22C-01-109 AML (CCLD) |
| AMERICAN ALTERNATIVE INSURANCE CORPORATION, et al.<br><br>        Plaintiffs,<br><br>        v. | C.A. No. N22C-02-046 AML (CCLD) |

| | |
|---|---|
| AMERISOURCEBERGEN CORPORATION, et al.<br><br>Defendants. | |
| XL INSURANCE AMERICA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN CORPORATION, et al.<br><br>Defendants. | C.A. No. N22C-02-084 AML (CCLD) |
| HARTFORD CASUALTY INSURANCE COMPANY, et al.<br><br>Plaintiffs,<br><br>v.<br><br>AMERISOURCEBERGEN CORPORATION, et al.<br><br>Defendants. | C.A. No. N22C-02-099 AML (CCLD) |

Peter B. Ladig, Esquire, Elizabeth A. Powers, Esquire, BAYARD, P.A., Wilmington, Delaware, Kevin T. Coughlin, Esquire, Suzanne C. Midlige, Esquire, Patrick K. Coughlin, Esquire, COUGHLIN MIDLIGE & GARLAND LLP, Morristown, New Jersey; Attorneys for Plaintiff Arrowood Indemnity Company.

Robert J. Katzenstein, Esquire Julie M. O'Dell, Esquire, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, Delaware, Christopher J. St. Jeanos, Esquire WILLKIE FARR & GALLAGHER LLP, New York, New York; Attorneys for Plaintiff National Union.

Carmella P. Keener, Esquire, COOCH AND TAYLOR, P.A., Wilmington, Delaware, Adam H. Fleischer, Esquire, Patrick Bedell, Esquire, Kevin F. Harris, Esquire, BATESCAREY LLP, Chicago, Illinois; Attorneys for Plaintiff American Alternative.

Erin R. Fay, Esquire, Gabriel B. Ragsdale, Esquire, BAYARD, P.A., Wilmington, Delaware, James P. Ruggeri, Esquire, Edward B. Parks, II, Esquire, RUGGERI PARKS WEINBERG LLP, Washington, District of Columbia; Attorneys for Plaintiffs Hartford Insurance.

Kathleen M. Miller, Esquire, Julie M. O'Dell, Esquire, SMITH, KATZENSTEIN & JENKINS LLP, Wilmington, Delaware, Kathryn Guinn, Esquire, DENTONS US LLP, Denver, Colorado, Deborah J. Campbell, Esquire, DENTONS US LLP, St. Louis, Missouri, Keith Moskowitz, Esquire, John Grossbart, Esquire, DENTONS US LLP, Chicago, Illinois; Attorneys for Plaintiff XL Insurance America

Garrett Moritz, Esquire, Richard Garrett Rice, Esquire, ROSS ARONSTAM & MORITZ LLP, Wilmington, Delaware; Attorneys for Plaintiffs ACE American Insurance Company, ACE Property and Casualty Insurance Company.

Brian M. Rostocki, Esquire, Anne M. Steadman, Esquire, REED SMITH, LLP, Wilmington, Delaware, Courtney C.T. Horrigan, Esquire Reed Smith LLP, Pittsburgh, Pennsylvania; Attorneys for Defendants AmerisourceBergen Corporation, AmerisourceBergen Drug Corporation, and MWI Veterinary Supply, Inc.

Submitted: March 9, 2023
Decided: March 30, 2023

**MEMORANDUM OPINION**

**Upon Defendants' Motions to Dismiss or Stay Duplicative Litigation:
DENIED**

**LEGROW, J.**

The plaintiffs in these actions are insurers who issued commercial general liability policies to one or more of the defendants, which are a prescription opioid distributor and its predecessor entities. The distributor and its predecessors have been named as defendants in thousands of lawsuits for their respective roles in allegedly exacerbating the opioid epidemic in the United States. Many of these lawsuits were initiated by state, municipal, and local government entities and seek legal and equitable relief to offset government and health care expenditures that resulted from the national opioid epidemic. The distributor seeks defense costs and indemnification from the insurers.

There is a complex history of litigation between these parties. First, the distributor filed an action in West Virginia seeking declarations regarding various insurance companies' obligations, if any, to cover the distributor's defense costs and potential liability in the opioid lawsuits. The West Virginia court bifurcated that coverage case to resolve insurance coverage issues common among the policies in that case. The West Virginia court also entered a tailored anti-suit injunction relating to the parties and policies at issue there. That case is ongoing, but none of the insurers in these Delaware actions are parties in West Virginia.

After the West Virginia coverage action was filed, certain insurers filed an action in California against the distributor and sought declarations that they have no duty to defend or indemnify the distributor for its liability in the opioid lawsuits.

1

That case also involves crossclaims between various insurers regarding the extent of their respective potential liability. The California court stayed that action as to the insurers who are parties to the West Virginia action. The California court also issued a tentative ruling that it lacked jurisdiction over the distributor and its affiliates. The remaining insurers have now voluntarily dismissed all their claims in California without prejudice.

Between the time the California court issued its stay and the time the insurers dismissed their claims in California, the insurers filed five actions in this Court. Each case has been brought by an insurer and is against the distributor or related entities. The insurers seek declarations that they have no duty to defend or indemnify the distributor or any of its entities for the opioid lawsuits. Some insurers also seek declarations limiting the scope of their respective potential duties to defend or indemnify.

The distributor moved to dismiss or stay these five actions based on *forum non conveniens*. The distributor contends these cases should be dismissed or stayed because the Delaware actions are "later filed," and earlier actions remain pending in other jurisdictions. The insurers oppose these motions and urge the Court to allow the Delaware actions to proceed. At this point, there are no other "pending cases" involving these insurers, and an analysis of the *forum non conveniens* factors otherwise weighs in favor of proceeding in Delaware. For those reasons, as

explained further below, the Court denies the distributor's motions to dismiss or stay these actions.

## FACTUAL BACKGROUND

### A. Defendant Entities and the Opioid Lawsuits

In 1977, Alco Standard Corporation acquired Drug House, a pharmaceutical wholesaler that operated in Pennsylvania and Delaware.[1] In 1979, Alco Standard acquired Kauffman-Lattimer, an Ohio-based company, to expand Alco Standard's distribution market.[2] In 1994, Alco Health Services, an Alco Standard subsidiary, changed its name to Amerisource Health.[3] Around 2001, Amerisource Health merged with Bergen Brunswig, another pharmaceutical distributor, to form AmerisourceBergen.[4]

Defendants AmerisourceBergen Corporation ("ABC") and AmerisourceBergen Drug Corporation ("ABDC") (collectively, "AmerisourceBergen" or "Defendants") are both Delaware corporations with their principal places of business in Pennsylvania.[5] AmerisourceBergen has been named as a defendant in several thousand lawsuits across the country relating to Defendants' distribution of prescription opioids.[6] These lawsuits were brought by

---

[1] Arrowood Amended Complaint ("Arrowood Am. Compl.") ¶ 27 (D.I. 3).
[2] *Id.*
[3] *Id.*
[4] *Id.* ¶ 28.
[5] *Id.* ¶¶ 12-13.
[6] *Id.* ¶¶ 1, 29.

state and local government entities, Native American tribes, and others seeking economic damages, injunctive relief, and other remedies against prescription opioid manufacturers, drug distributors, and retail pharmacies for alleged harm resulting from the opioid epidemic (the "Opioid Lawsuits").[7] The majority of the Opioid Lawsuits are consolidated in the United States District Court for the Northern District of Ohio, Eastern Division, in the multi-district litigation captioned *In re National Prescription Opiate Litigation*, MDL No. 2804, Case No. 1:17-md-2804 (the "MDL Action").[8]  Under the procedural framework established by the MDL Action and other state courts, the Opioid Lawsuits are represented by "bellwether complaints" that "act as indicators of the content and allegations of the broader class of Opioid Lawsuits."[9]

Some of the cases in the MDL Action are designated as "Track One" cases (the "Track One Cases").[10]  In the Track One Cases, the bellwether complaints allege AmerisourceBergen violated its statutory duties under federal and state laws to "monitor, detect, investigate, refuse to fill[,] and report suspicious orders of prescription opioids."[11]  These cases do not allege AmerisourceBergen is liable to the plaintiffs for damages caused by bodily injury.  Instead, they seek recovery for

---

[7] *Id.* ¶ 1.
[8] *Id.* ¶ 31; XL Insurance America Complaint ("XL Insurance Compl.") ¶ 36 (D.I. 1).
[9] Arrowood Am. Compl. ¶ 32.
[10] *Id.*
[11] *Id.* ¶ 35.

4

economic damages the plaintiffs expended to combat the opioid epidemic.[12]

AmerisourceBergen has settled some of the Opioid Lawsuits and is litigating numerous others.[13]

## B. The Pending Actions in this Court

There are five separate actions consolidated for purposes of considering and resolving AmerisourceBergen's current Motions to Dismiss or Stay Duplicative Litigation Due to Improper Venue (collectively, the "Motions").[14] First, Arrowood Indemnity Company ("Arrowood") originally filed an action against ABC and ABDC on January 26, 2022.[15] On March 1, 2022, Arrowood filed its Amended Complaint to add St. Paul Fire and Marine Insurance Company, St. Paul Mercury Insurance Company, ACE American Insurance Company, and ACE Property and Casualty Insurance Company as co-defendants (the "Additional Defendants").[16] Arrowood issued seven commercial general liability insurance policies to Amerisource Health (the "Arrowood Policies"), each of which provided coverage for one year from December 31, 1994, to December 31, 2001.[17] AmerisourceBergen

---

[12] *Id.* ¶¶ 6, 37. These cases also seek equitable relief to "abate the alleged 'public nuisance' created by AmerisourceBergen and other opioid defendants." *See id.* ¶ 6.

[13] *See, e.g.*, *id.* ¶¶ 43-46 (listing cases AmerisourceBergen has settled, with monetary settlements projected in the multi-billion-dollar range).

[14] *See, e.g.*, Defendants' Motion to Dismiss or Stay Duplicative Litigation Due to Improper Venue ("Defs.' Mot. to Dismiss Arrowood Action") (D.I. 31). AmerisourceBergen filed similar Motions for all five actions, which are discussed in more detail below.

[15] *See* Arrowood Complaint (D.I. 1). This action is captioned as *Arrowood Indem. Co. v. AmerisourceBergen Corp., et al.*, C.A. No. N22C-01-182 AML (CCLD).

[16] *See* Arrowood Am. Compl.

[17] *Id.* ¶ 53 (listing each policy number).

has demanded coverage for the Opioid Lawsuits under the Arrowood Policies for 1996-2000.[18] Arrowood seeks declarations from this Court that Arrowood has no duty to defend or indemnify AmerisourceBergen under those policies.[19] In the event Arrowood is found to have a coverage obligation with respect to the Opioid Lawsuits, Arrowood alleges the Additional Defendants likewise have coverage obligations,[20] and Arrowood seeks a declaration as to the scope and amount of coverage to be provided by Arrowood and the Additional Defendants.[21] It also seeks declarations that relate to the Additional Defendants' obligations to indemnify Arrowood.[22]

Second, National Union Fire Insurance Company of Pittsburgh, PA ("National Union") filed an action against ABC and ABDC on January 17, 2022.[23] National Union issued three excess liability policies to Amerisource Health, Amerisource Distribution Corporation, and other AmerisourceBergen predecessor entities; these policies covered bodily injury that occurred between December 31, 1994, and December 31, 2000 (the "National Union Policies").[24] National Union

---

[18] *See id.* ¶ 54.

[19] *See id.* ¶¶ 58-65.

[20] *See id.* ¶ 68.

[21] *See id.* ¶¶ 66-69.

[22] *See id.* ¶¶ 70-77.

[23] *See* National Union Complaint ("National Union Compl.") (D.I. 1). This action is captioned as *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. AmerisourceBergen Corp., et al.*, C.A. No. N22C-01-109 AML (CCLD).

[24] *See id.* ¶ 2.

seeks declarations that it is not obligated to defend or indemnify AmerisourceBergen in the Opioid Lawsuits under the National Union Policies.[25]

Third, American Alternative Insurance Corporation and North American Capacity Insurance Company (collectively, "American Alternative") filed an action against ABC and ABDC on February 4, 2022.[26] American Alternative Insurance Company issued one policy to Bergen Brunswig Corporation, an ABC predecessor, for the coverage period of May 1, 2000, to May 1, 2001 (the "American Alternative Policy").[27] The American Alternative Policy is a "follow-form excess policy" that provides coverage for bodily injuries that occurred while the policy was in effect.[28] North American Capacity Insurance Company issued seven insurance policies to ABC for the period of May 1, 2013, to May 1, 2017 (the "North American Capacity Policies").[29] The North American Capacity Policies cover damages due to bodily injury that occurred during the policy period and that were caused by an accidental occurrence.[30] American Alternative seeks declarations that, *inter alia*, it is not

---

[25] *See id.* ¶¶ 47-54.
[26] American Alternative and North American Capacity Complaint ("American Alternative Compl.") (D.I. 1). This action is captioned as *Am. Alt. Ins. Corp., and North Am. Capacity Ins. Co. v. AmerisourceBergen Corp., et al.*, C.A. No. N22C-02-046 AML (CCLD).
[27] *Id.* ¶ 9.
[28] *Id.* ¶ 10.
[29] *Id.* ¶ 11.
[30] *Id.* ¶ 12.

obligated to defend or indemnify AmerisourceBergen in the Opioid Lawsuits under either the American Alternative Policy or the North American Capacity Policies.[31]

Fourth, XL Insurance America, Inc. ("XL Insurance") filed an action against ABC and ABDC on February 9, 2022.[32] XL Insurance issued five excess liability insurance policies to ABC for the coverage period of May 1, 2013, to May 1, 2018 (the "XL Insurance Policies").[33] The XL Insurance Policies cover losses due to bodily injury that took place during the policy periods.[34] XL Insurance seeks declarations that it is not obligated to defend or indemnify AmerisourceBergen in connection with the Opioid Lawsuits under the XL Insurance Policies.[35]

Finally, Hartford Casualty Insurance Company, Hartford Fire Insurance Company, Nutmeg Insurance Company, and Twin City Fire Insurance Company (collectively, "Hartford Insurance" and together with Arrowood, National Union, American Alternative, and XL Insurance, "Plaintiffs") filed an action against ABC, ABDC, and MWI Veterinary Supply, Inc. on February 11, 2022.[36] Hartford Insurance issued policies to Bellco Drug Corporation, Bergen Brunswig

---

[31] *See id.* ¶¶ 57-87.

[32] *See* XL Insurance Compl. This action is captioned as *XL Ins. Am. Inc. v. Amerisource Bergen Corp., et al.*, C.A. N22C-02-084 AML (CCLD).

[33] *See id.* ¶ 12.

[34] *See id.* ¶ 55.

[35] *See id.* ¶¶ 62-69.

[36]*See* Hartford Insurance Complaint ("Hartford Insurance Compl.") (D.I. 1). This action is captioned as *Hartford Cas. Ins. Co. v. AmerisourceBergen Corp., et al.*, C.A. No. N22C-02-099 AML (CCLD).

8

Corporation, and MWI Veterinary Supply, Inc. for the coverage period of 1996 to 2007 (the "Hartford Insurance Policies").[37] The Hartford Insurance Policies provide coverage for losses due to bodily injury that took place during the policy periods.[38] Hartford Insurance seeks declarations that it has no obligation to defend or indemnify AmerisourceBergen in connection with the Opioid Lawsuits under the Hartford Insurance Policies.[39]

**C. The West Virginia Attorney General Action and Other West Virginia Actions**

On June 26, 2012, the State of West Virginia, by its Attorney General, filed a major opioid-related action against ABC and other prescription drug distributors (the "WVAG Action").[40] The WVAG Action concerned the distribution of hydrocodone and oxycodone in West Virginia between 2007 and 2012.[41] The State of West Virginia alleged ABC and others failed to provide effective controls and procedures to guard against the diversion of controlled substances in violation of West Virginia law.[42] The West Virginia Attorney General alleged non-accidental conduct by ABC

---

[37] *See id.* ¶ 2.
[38] *Id.* ¶ 44.
[39] *See id.* ¶¶ 46-57.
[40] *See* National Union Compl. ¶ 21; American Alternative Compl. ¶ 27. The WVAG Action is captioned as *State of West Virginia v. AmerisourceBergen Drug Corporation, et al.*, C.A. No. 12-C-141 (Circuit Court of Boone County West Virginia).
[41] National Union Compl. ¶ 22.
[42] *Id.*; *see also* American Alternative Compl. ¶ 27.

9

and sought remedies other than those related to damages for bodily injury.[43]   On December 2, 2016, AmerisourceBergen settled the WVAG Action for $16 million.[44]

After AmerisourceBergen settled the WVAG Action, certain West Virginia cities and counties filed similar prescription opioid lawsuits in West Virginia.[45] Many are ongoing.[46]

## D. The West Virginia Coverage Action

On March 16, 2017, ABDC filed a coverage action in West Virginia against St. Paul Fire and Marine Insurance Company, ACE American Insurance Company, ACE Property and Casualty Insurance Company, American Guarantee & Liability Insurance Company, and Endurance American Insurance Company, seeking breach-of-contract damages and a declaration of rights to defense and/or indemnification of the WVAG Action and all other then-pending Opioid Lawsuits (the "West Virginia Coverage Action").[47]   On July 18, 2018, ABDC filed an amended complaint in the

---

[43] National Union Compl. ¶ 22; XL Insurance Compl. ¶ 34.

[44] XL Insurance Compl. ¶ 35; American Alternative Compl. ¶ 27; National Union Compl. ¶ 23.

[45] Defs.' Mot. to Dismiss Arrowood Action, Declaration of Courtney C.T. Horrigan ("Horrigan Decl.") ¶ 4 (D.I. 31). "Beginning in 2017, additional government entities, Native American Tribes, third-party payors, and individuals filed prescription opioid lawsuits against one or more" AmerisourceBergen entities. *See id.*

[46] "As of April 14, 2022, approximately 3,436 prescription opioid lawsuits have been filed against one or more" AmerisourceBergen entities. *See id.* ¶ 5.

[47] *See* Mot. to Dismiss Arrowood Action at 8, Ex. B (displaying a copy of the complaint in the West Virginia Coverage Action); *see also* Horrigan Decl. ¶ 8. "[T]he Court may take judicial notice of publicly available facts that are not subject to reasonable dispute, such as the fact that statements were made in filings in other courts." *See Nicholas v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 2013 WL 1143514, at *3 (Del. Super. Mar. 19, 2013) (citing *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 n.28 (Del. 2004)), *rev'd on other grounds*, 83 A.3d 731 (Del. 2013); *see also Nelson v. Emerson*, 2008 WL 1961150, at *2 n.2 (Del. Ch. May 6, 2008)

West Virginia Coverage Action to list additional Opioid Lawsuits filed against it since the original complaint was filed.[48]

The West Virginia court bifurcated the West Virginia Coverage Action into two phases.[49] That court also is employing the "bellwether" concept by first hearing a test case to decide common contested issues.[50] Phase I will evaluate coverage for the WVAG Action under AmerisourceBergen's standard form general liability policies at issue in that action.[51] AmerisourceBergen's general liability policies in the WVAG Action are comparable to AmerisourceBergen's and its predecessor entities' other general liability insurance policies.[52] There are several summary judgment motions currently pending before the West Virginia court regarding policy language and exclusions at issue in Phase I.[53]

### E. The California Coverage Action

On November 5, 2020, St. Paul Fire and Marine Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Property Casualty Company of America, and The Travelers Indemnity Company

---

(taking judicial notice of facts from "documents filed in related federal court proceedings" on a motion to dismiss).

[48] Defs.' Mot. to Dismiss Arrowood Action at 9, Ex. C (displaying a copy of the amended complaint).

[49] *Id.* at 10; Horrigan Decl. ¶ 10.

[50] Defs.' Mot. to Dismiss Arrowood Action at 10; Horrigan Decl. ¶ 10.

[51] Defs.' Mot. to Dismiss Arrowood Action at 10, Ex. D (displaying a copy of the West Virginia court's order to bifurcate).

[52] *See id.* at 10; Horrigan Decl. ¶ 10.

[53] *See* Official Transcript ("Hearing Tr.") at 90:17-21, 24:8-18 (D.I. 55 in *Am. Alt. Ins. Corp., and North Am. Capacity Ins. Co. v. AmerisourceBergen Corp.,* C.A. No. N22C-02-046 AML (CCLD)).

(collectively, "St. Paul") filed an action for declaratory judgment in California Superior Court against AmerisourceBergen and certain of its affiliates, seeking judicial declarations that those insurers have no obligation to defend or indemnify the named defendants for the Opioid Lawsuits (the "California Coverage Action").[54] St. Paul also filed contingent contribution claims against several of the insurers who are plaintiffs in this action. Those claims sought (i) declarations as to those insurers' obligations to defend and indemnify the AmerisourceBergen entities; and (ii) equitable contribution and indemnification against the insurers in the event the court concluded St. Paul was liable to AmerisourceBergen under the policies.[55] Arrowood, National Union, American Alternative, XL Insurance, Hartford Casualty Insurance Company, and Hartford Fire Insurance Company were joined as defendants in the California Coverage Action "to ensure the interests they have or may have in the subject matter of this declaratory judgment action are not litigated or affected in their absence."[56] The complaint in the California Coverage Action carved out from its requested relief any determination as to coverage issues that were the subject of the West Virginia Coverage Action.[57]

---

[54] *See* Defs.' Mot. to Dismiss Arrowood Action at 11, Ex. H (displaying a copy of the California Coverage Action complaint).
[55] *See id.*, Ex. H ¶¶ 54-62.
[56] *See id.*, Ex. H ¶¶ 22-23.
[57] *See id.*, Ex. H ¶ 41 n.11.

Between December 2020 and February 2021, Plaintiffs to the actions in this Court filed cross-claims and third-party complaints in the California Coverage Action against AmerisourceBergen, seeking declarations that they have no obligation under their respective policies to defend or indemnify AmerisourceBergen for the Opioid Lawsuits.[58] From March 2021 to April 2021, AmerisourceBergen moved to quash service of the cross-claims in California, arguing the California court did not have personal jurisdiction over AmerisourceBergen and moved to dismiss or stay the cross-complaint actions based on *forum non conveniens*.[59] At the time, AmerisourceBergen argued to the California court that Delaware would be a more appropriate forum.[60]

---

[58] *See* Arrowood Answering Brief ("Arrowood Answ. Br.") at 13 (D.I. 49); National Union Answ. Brief at 11; American Alternative Answering Brief ("American Alternative Answ. Br.") at 10 (D.I. 23); XL Insurance Answering Brief ("XL Insurance Answ. Br.") at 6 (D.I. 25); Hartford Insurance Answering Brief ("Hartford Insurance Answ. Br.") at 10 (D.I 24).

[59] *See* Arrowood Answering Br. at 13-14; National Union Answering Brief ("National Union Answ. Br.") at 11 (D.I. 21); American Alternative Answ. Br. at 10-11; XL Insurance Answ. Br. at 6; Hartford Insurance Answ. Br. at 11-12.

[60] *See* American Alternative Answ. Br., Ex. D at 8-9 (arguing in its motion that American Alternative has no connection to California; American Alternative is a Delaware corporation with its principal place of business in New Jersey; ABC and ABDC have no meaningful connection to California; ABC and ABDC are both incorporated in Delaware and have their principal places of business in Pennsylvania); *see also id.*, Ex. E at 8-9 (same, but with regard to XL Insurance); *id.*, Ex. H at 15 (arguing in AmerisourceBergen's motion that West Virginia, Pennsylvania, or Delaware "are far more suitable forums" than California for the policy coverage disputes). Additionally, AmerisourceBergen filed a motion in California to admit two attorneys as "specially appearing," which is a designation adopted by parties who do not agree to submit to the jurisdiction of California courts. *See* Arrowood Answ. Br. at 26, Ex. D (displaying a copy of "specially appearing defendants case management statement"); *see also id.*, Ex. L (displaying a copy of "joint stipulation" and noting the "cross-defendants" have the designation of "specially appearing").

On February 19, 2021, the California court stayed further proceedings on St. Paul's insurance coverage complaint "pending resolution of the West Virginia action."[61] On June 17, 2021, the California court issued a tentative ruling on AmerisourceBergen's Motion to Quash and Motion to Dismiss or Stay the cross-complaints. The California court held "specific jurisdiction [was] lacking," but permitted the insurers to take jurisdictional discovery related to AmerisourceBergen's opioid sales in California.[62] Jurisdictional discovery failed to provide a clear record from which the insurers could argue general jurisdiction existed in California.[63] As a result, the insurers voluntarily dismissed their cross-complaints, as discussed more fully below.

### F. The Anti-Suit Injunction in West Virginia

On November 25, 2020, AmerisourceBergen filed a motion in the West Virginia Coverage Action seeking an anti-suit injunction precluding the insurers from pursuing the California Coverage Action.[64] The West Virginia court granted

---

[61] Defendants' Motion to Dismiss National Union Action ("Defs.' Mot. to Dismiss National Union Action") at 12, Ex. L at 4 (staying the California Coverage Action because, *inter alia*, the West Virginia Coverage Action involved similar issues and parties) (D.I. 9). The California court's order to stay the California Coverage Action was affirmed by the California Court of Appeals. *See* Letter for Judicial Review in the Arrowood Action, Ex. B (D.I. 52).

[62] *See id.*, Ex. G. This was the ruling for Arrowood, but all other Plaintiffs received similar rulings. *See* National Union Answ. Br. at 11-12, Ex. D; American Alternative Answ. Br. at 11; XL Insurance Answ. Br. at 6-7; Hartford Insurance Answ. Br. at 12-13.

[63] *See, e.g.*, Arrowood Answ. Br. at 14-15 (noting that AmerisourceBergen was unable to produce evidence of opioid sales for the relevant time period, and that "jurisdictional discovery became bogged down in various disputes with the prospect of drawn-out motion practice").

[64] *See* Defs.' Mot. to Dismiss Arrowood Action, Ex. I ¶ 9.

AmerisourceBergen's motion.[65]   The injunction "enjoined [all parties] from instituting or prosecuting any collateral litigation . . . against one another relating to insurance coverage for prescription opioid lawsuits against ABC, ABDC, or any other affiliated entity" and would "remain in effect unless and until lifted by further order of the [West Virginia court] or until [the West Virginia Coverage Action] has concluded."[66]

On November 15, 2021, the Supreme Court of Appeals of West Virginia affirmed in part, reversed in part, and remanded the lower court's injunction.[67]   The Supreme Court of Appeals upheld entry of the injunction but concluded its scope was overly broad.[68]   On June 10, 2022, the lower court modified its initial injunction (the "Amended Injunction") as follows:

> a. The Injunction shall be a temporary rather than permanent injunction and shall only enjoin the parties from pursuing collateral litigation while [the West Virginia Coverage Action] remains pending.
>
> b. The Injunction will only apply where each of the following conditions are met: [i.] The collateral suit must concern insurance policies issued to ABDC or its predecessors and affiliates[;] [ii.] The collateral suit must concern insurance policies issued by the Insurer Defendants in this case or their predecessors and affiliates[;] [iii.] The collateral suit must concern insurance policies that are either expressly at issue in this case, that are implicitly at issue in this case by virtue of

---

[65] *See id.*, Ex. I ¶ 15.
[66] *See id.*, Ex. I ¶¶ 164-65.
[67] *See id.* at 13 n.8; Arrowood Answ. Br. at 10 n.4; *see also St. Paul Fire & Marine Ins. Co. v. AmerisourceBergen Drug Corp.*, 868 S.E.2d 724, 737 (W. Va. 2021).
[68] Arrowood Answ. Br. at 10 n.4; *St. Paul Fire & Marine Ins. Co.*, 868 S.E.2d at 737.

15

the temporal scope of the claims asserted in the cases that make up Phase 2 of this case, which include all of defendants' policies back to at least January 1, 1996, and/or that are written on forms that are substantially similar to the forms at issue in this case, or that follow form to such insurance policies; and [iv.] The collateral suit must concern insurance coverage for prescription opioid liability lawsuits of the same types that have been included in the National Opioid MDL or the West Virginia Opioid MLP.

c. The Injunction is modified to clarify that nothing in the Injunction will preclude any party from seeking a compromise resolution of any claims, whether through settlement or otherwise.

d. Finally, the Court further modifies the Injunction to confirm that the Court will hold a hearing at the conclusion of Phase 1 of this dispute, which is currently scheduled for trial on October 4, 2022, at which time the Court will hear argument on whether changed circumstances equitably require modification of the Injunction to effectuate the purposes identified by the West Virginia Supreme Court or whether further modifications in the interests of justice are required.[69]

On October 11, 2022, certain insurers to the West Virginia Coverage Action filed an appeal in the West Virginia Supreme Court of Appeals seeking to reverse and vacate the Amended Injunction.[70] Additionally, St. Paul's opening brief to the West Virginia Supreme Court of Appeals states the "Phase 1 trial that was previously set to begin in [the West Virginia Coverage Action] on October 4, 2022 has been adjourned, with no new trial date set."[71]

---

[69] Letter for Judicial Review in the Arrowood Action, Ex. A at 62-63 (D.I. 52).
[70] *See* Letter for Judicial Review in the Arrowood Action, Ex. A (D.I. 77); *see also id.*, Ex. A at 40.
[71] *See id.*, Ex. A at 13.

## G. The Delaware Actions Are Filed

The five pending actions in this Court were filed between January 17, 2022, and February 11, 2022.[72] The California Coverage Action was stayed by the time the actions were filed in this Court, and it also appeared likely by that time that AmerisourceBergen would prevail in its personal jurisdiction defense to the crossclaims.[73] The California Court of Appeals affirmed the lower court's stay during the pendency of these actions.[74] After filing the Delaware complaints, each of the Plaintiff insurers moved to dismiss its California cross-complaint without prejudice.[75] Additionally, in July 2022, St. Paul filed in the California Coverage Action a request to dismiss its contribution claims against the insurers without prejudice.[76]

As a result of those procedural shifts, by the time this Court heard oral argument on the pending Motions, the following was (and remains) true: none of the

---

[72] *See* Arrowood Complaint (filing date of January 26, 2022); National Union Compl. (filing date of January 17, 2022); American Alternative Compl. (filing date of February 4, 2022); XL Insurance Compl. (filing date of February 9, 2022); Hartford Insurance Compl. (filing date of February 11, 2022).

[73] *See, e.g.*, Arrowood Answ. Br., Ex. G.

[74] *See* Letter for Judicial Review in the Arrowood Action, Ex. B (D.I. 52).

[75] Arrowood Answ. Br. at 15; Defs.' Mot. to Dismiss Arrowood Action, Ex. O; National Union Answ. Br. at 12-13; American Alternative Answ. Br. at 11-12, Ex. J, Ex. K; [75] XL Insurance Answ. Br. at 7; *see also* Defendants' Motion to Dismiss XL Insurance Action ("Defs.' Mot. to Dismiss XL Insurance Action"), Ex. Q (D.I. 20); Hartford Insurance Answ. Br. at 14, Ex. H, Ex. I.

[76] *See* Letter for Judicial Review in the Arrowood Action, Ex. A (D.I. 59); Letter for Judicial Review in the National Union Action, Exs. (D.I. 34).

Plaintiffs have claims pending in the California Coverage Action;[77] none of the Plaintiffs are parties in the West Virginia Coverage Action;[78] the policies at issue in this case are not at issue in the West Virginia Coverage Action;[79] and the California court stayed St. Paul's complaint—including its contingent contribution claims—in the California Coverage Action pending resolution of the West Virginia Coverage Action.[80] Further, AmerisourceBergen has not agreed to withdraw its jurisdictional objections in California.[81] Even if St. Paul refiled its contribution claims against Plaintiffs in California, AmerisourceBergen will continue to resist jurisdiction there, likely successfully. As a result, even if the California court rules on Plaintiffs' coverage obligations vis-à-vis AmerisourceBergen, that ruling likely would not have any preclusive effect on AmerisourceBergen, a point AmerisourceBergen's counsel conceded during oral argument on the Motions.[82] In other words, neither the West Virginia court nor the California court is positions to decide Plaintiffs' coverage obligations to AmerisourceBergen under the policies and underlying proceedings raised in the Delaware complaints.

---

[77] This is because, as explained *supra*, all Plaintiffs to these actions voluntarily dismissed their cross-complaints without prejudice in California.

[78] *See* Hartford Insurance Answ. Br. at 9; XL Insurance Answ. Br. at 5; American Alternative Answ. Br. at 8; National Union Answ. Br. at 8; Arrowood Answ. Br. at 9-10.

[79] Hearing Tr. at 116:1-6, 120:5-10, 35:6-8, 77:9-14.

[80] Defs.' Mot. to Dismiss Arrowood Action, Ex. K at 4; *see also* Arrowood Answ. Br. at 12 (noting St. Paul's California complaint has been stayed since February 2021).

[81] Hearing Tr. at 130:4-133:4, 43:22-44:5, 97:11-15, 98:2-5, 105:4-7.

[82] Hearing Tr. at 130:4-17

## H. The Parties' Contentions

AmerisourceBergen's arguments in all five Motions are essentially the same and will be discussed together. AmerisourceBergen asks this Court dismiss or stay these actions and relies on the Delaware Supreme Court's decision in *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Engineering Co.*[83] as support for that motion. AmerisourceBergen contends the *McWane* doctrine requires a dismissal or stay of these Delaware actions because a substantially similar action already is pending elsewhere.[84] AmerisourceBergen maintains St. Paul filed the California Coverage Action more than a year before Plaintiffs filed these "duplicative" cases in Delaware;[85] the stay in California does not change the *McWane* analysis;[86] the California Coverage Action involves all the issues Plaintiffs raise in these actions;[87] and to litigate these actions before resolution of the California Coverage Action is "not necessary to have prompt and complete justice."[88] AmerisourceBergen contends these factors, taken together, establish that Delaware is an improper venue for these actions, or, at a minimum, these Delaware actions should be stayed pending resolution in California.[89]

---

[83] 263 A.2d 281 (Del. 1970).
[84] *See* Defs.' Mot. to Dismiss Arrowood Action at 18-21.
[85] *See id.* at 21-23.
[86] *See id.* at 23-25.
[87] *See id.* at 25-27.
[88] *See id.* at 27-29.
[89] *See id.* at 29.

Plaintiffs' responses to AmerisourceBergen's Motions also are substantially similar. Plaintiffs contend *McWane* is the incorrect standard in this case and should not be applied.[90] Plaintiffs maintain *Cryo-Maid*'s *forum non conveniens* factors should be evaluated under the neutral application set forth in *Gramercy Emerging Markets Fund v. Allied Irish Banks, P.L.C.*,[91] rather than the defendant-friendly application set forth in *McWane*.[92] Plaintiffs argue that when the facts are evaluated under a neutral application of the *Cryo-Maid* factors, they weigh "overwhelmingly" in favor of proceeding in Delaware.[93] Namely, the parties' access to proof is easier in Delaware because each party's business is headquartered on the East Coast;[94] the availability of compulsory process does not favor California;[95] Delaware has a significant interest in these disputes;[96] proceeding in Delaware would be easier, more expeditious, and less expensive;[97] there is no other pending action where a court will resolve Plaintiffs' claims against AmerisourceBergen;[98] and there is no other suitable forum for these claims.[99]

---

[90] *See* Hartford Insurance Answ. Br. at 15-19.
[91] 173 A.3d 1033 (Del. 2017).
[92] *See* Arrowood Answ. Br. at 18-25.
[93] *See id.* at 29-30.
[94] *See id.* at 30-31.
[95] *See id.* at 31.
[96] *See id.* at 32-33.
[97] *See id.* at 33-34.
[98] *See id.* at 34.
[99] *See id.* at 34-35.

## ANALYSIS

Delaware Superior Court Civil Rule 12(b)(3) governs a motion to dismiss or stay on the basis of *forum non conveniens*.[100]  Under Delaware law, the applicable *forum non conveniens* test varies based on the proceedings in this Court and the parties' litigation history.[101]  Generally, on a motion to dismiss, the Court accepts the complaint's well-pleaded facts as true and draws all reasonable inferences in the plaintiff's favor.[102]  When, however, the motion to dismiss is one based on *forum non conveniens*, "this Court exercises its sound discretion when making findings of fact and drawing conclusions therefrom" by using "an orderly and logical deductive process."[103]

"A motion raising *forum non conveniens* is a request that a court possessing both personal and subject matter jurisdiction over an action nevertheless decline to hear it."[104]  The common law *forum non conveniens* doctrine "does not exist to deprive a plaintiff of [its] choice of forum, but rather as a backstop to prevent resort to intentionally inconvenient forums for illegitimate purposes."[105]  In settling these

---

[100] *See* Del. Super. Ct. Civ. R. 12(b)(3); *see also Focus Fin. P'rs, LLC v. Holsopple*, 250 A.3d 939, 952 (Del. Ch. 2020) ("A motion invoking [the doctrine of *forum non conveniens*] proceeds under Rule 12(b)(3)." (citation omitted)).

[101] *In re CVS Opioid Ins. Litig.*, 2022 WL 3330427, at *3 (Del. Super. Aug. 12, 2022) (citing *Aranda v. Philip Morris USA Inc.*, 183 A.3d 1245, 1250-51 (Del. 2018)).

[102] *Id.* at *4 (citing *Olenik v. Lodzinski*, 208 A.3d 704, 714 (Del. 2019)).

[103] *Id.* (citing *Williams Gas Supply Co. v. Apache Corp.*, 594 A.2d 34, 37 (Del. 1991)).

[104] *GXP Cap., LLC v. Argonaut Mfg. Servs., Inc.*, 234 A.3d 1186, 1193 (Del. Super. 2020), *aff'd*, *appeal dismissed*, 253 A.3d 93 (Del. 2021).

[105] *Id.* (citing *Winsor v. United Air Lines, Inc.*, 154 A.2d 561, 563 (Del. Super. 1958)).

21

Motions, the primary issue before the Court is whether a "prior pending" action exists between the parties. The answer to that question will control the standard the Court applies to the Motions.[106]

Three distinct standards for *forum non conveniens* exist in Delaware and a reviewing court must select the appropriate standard based on the case's procedural facts. First, under the "plaintiff friendly" *Cryo-Maid* test, when a case in Delaware is first-filed, Delaware courts should award dismissal only when the defendant has established that litigating in Delaware would create an "overwhelming hardship."[107] The so-called *Cryo-Maid* factors, discussed below, guide the reviewing court's hardship analysis. Second, the "defendant friendly" *McWane* doctrine applies when a case in Delaware is later-filed and when an earlier case remains pending in another jurisdiction.[108] Under this standard, a stay should be granted when: "there is a prior action pending elsewhere"; the other court is "capable of [providing] prompt and complete justice"; and the other action involves "the same parties and the same issues."[109] Finally, a more neutral, intermediate *Cryo-Maid* test applies when the case in Delaware is later-filed but the earlier case has been dismissed by the other jurisdiction. Under this intermediate standard, the reviewing court may exercise its

---

[106] *See id.* at 1193-95 (noting different standards to apply to a *forum non conveniens* motion depending on the litigation history of the parties).

[107] *See id.* at 1194 (citing *Candlewood Timber Grp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 998 (Del. 2004)); *In re CVS Opioid Ins. Litig.*, 2022 WL 3330427, at *4.

[108] *See GXP Cap., LLC*, 234 A.3d at 1194; *McWane Cast Iron Pipe Corp.*, 263 A.2d at 283.

[109] *McWane Cast Iron Pipe Corp.*, 263 A.2d at 283.

discretion and should award dismissal when the *Cryo-Maid* factors weigh in favor of that outcome.[110]  The Delaware Supreme Court's decision in *Gramercy* is the defining precedent for this intermediate standard.[111]

## I. The Defendants' Motions must be evaluated under *Gramercy*'s "intermediate" framework.

The first standard, which focuses on "overwhelming hardship," does not apply to this case.  None of these actions was "first-filed" in Delaware.  None of the parties advocates for this standard.

AmerisourceBergen urges the Court to apply the *McWane* doctrine, but it also does not apply to this case.  None of the cross-claims Plaintiffs filed against AmerisourceBergen in California remains pending; those actions all have been voluntarily dismissed without prejudice.[112]  AmerisourceBergen's Motions relied in part on its position that, although the cross-claims in California were dismissed, the coverage issues in California remained pending because of St. Paul's contingent contribution claims.[113]  Those contribution claims also now have been dismissed.[114]

---

[110] *See Gramercy Emerging Markets Fund*, 173 A.3d at 1044.

[111] *GXP Cap., LLC*, 234 A.3d at 1195 (citing *Aranda*, 183 A.3d at 1250-51).

[112] *See* Arrowood Answ. Br. at 15; Defs.' Mot. to Dismiss Arrowood Action, Ex. O; National Union Answ. Br. at 12-13; American Alternative Answ. Br. at 11-12, Ex. J, Ex. K; XL Insurance Answ. Br. at 7; Defs.' Mot. to Dismiss XL Insurance Action, Ex. Q; Hartford Insurance Answ. Br. at 14, Ex. H, Ex. I.

[113] *See, e.g.*, Defs.' Mot. to Dismiss Arrowood Action at 25 (arguing that resolution of St. Paul's contribution claims in California will resolve or narrow the issues in these actions).

[114] *See* Letter for Judicial Review in the American Alternative Action (D.I. 38) ("St. Paul has recently filed requests to dismiss all claims against the plaintiff insurers in the [California Coverage Action] and the plaintiff insurers have filed requests to dismiss all cross-complaint claims pending against St. Paul in California.").

At oral argument, AmerisourceBergen urged this Court not to consider those dismissals, characterizing them as "machinations" intended to force AmerisourceBergen into a third forum for coverage litigation.[115] AmerisourceBergen suggested this Court should resolve the pending Motions based on the California Coverage Action's procedural posture at the time the Delaware complaints were filed. AmerisourceBergen offers no support for this position, which in any event would not promote judicial efficiency or the prompt resolution of the parties' dispute.

The Court sees no reason to ignore the procedural realities in California. To the contrary, it is unlikely the coverage issues between AmerisourceBergen and the Plaintiffs will be revived in California due to the jurisdictional defenses AmerisourceBergen raised there.[116] AmerisourceBergen's position would require the Court to ignore those defenses and their legal and practical effect in the California Coverage Action. Although AmerisourceBergen suggests Plaintiffs are involved in "gamesmanship" because they allegedly used the California Coverage Action's procedural posture to their advantage, the Court finds little merit to those arguments. Plaintiffs' decision to file here, even if partially motivated by the Delaware Supreme Court's decision in *ACE American Insurance Company v. Rite*

---

[115] Hearing Tr. at 19:21-20:3.

[116] *See, e.g.*, Arrowood Answ. Br. at 14-15 (noting that AmerisourceBergen was unable to produce evidence of opioid sales for the relevant period, and that "jurisdictional discovery became bogged down in various disputes with the prospect of drawn-out motion practice").

*Aid Corporation*,[117] also stemmed from AmerisourceBergen's decision to resist jurisdiction in California. That is, AmerisourceBergen's position would have this Court blind itself to the reality that Delaware appears to be the only jurisdiction in which the coverage claims between these parties are likely to proceed.

When the Court considers the California Coverage Action in its present procedural posture, it is plain that Defendants' argument for *McWane*'s application is not persuasive. *McWane* hinges on whether there are currently pending claims elsewhere that could make the Delaware action duplicative.[118] There are not. The only claims remaining in California are St. Paul's claims, which have been stayed.[119] To the extent Plaintiffs' coverage claims against AmerisourceBergen were ever pending in California, they have now been voluntarily dismissed without prejudice.[120] "[W]hen a prior-filed case is no longer pending, relief will be granted

---

[117] 270 A.3d 239 (Del. 2022).

[118] *See Gramercy Emerging Markets Fund*, 173 A.3d at 1036 ("[A] Delaware action with a predecessor *pending* elsewhere . . . implicates *McWane*'s discretionary standard." (emphasis added)); *see also Aranda*, 183 A.3d at 1250 (noting that the *McWane* test is implicated when there is "a second-filed Delaware case with another first-filed case pending elsewhere").

[119] *See* Arrowood Answ. Br. at 28 ("[T]he [California Coverage Action] relates to whether [St. Paul] and other insurers that issued insurance policies to the Bergen Brunswig Affiliates owe coverage to [AmerisourceBergen] for alleged misconduct by *the Bergen Brunswig Affiliates* relating to the distribution of opioids between 1995 and 2016, whereas this action relates to whether [Plaintiffs, who] issued coverage to [ABC predecessors], owe[] coverage to [AmerisourceBergen] for alleged misconduct by [ABC predecessors]." (emphasis in original)); *see also id.* at 13 (noting St. Paul issued "primary or umbrella coverage" to "ABC Entities" or "Bergen Brunswig," which were the policies at issue in California).

[120] *See* Defendants' Reply Brief in Hartford Action ("Defs.' Reply Br. in Hartford Action") at 10-11 (D.I. 30). Defendants admit that "when a prior action is no longer pending, *McWane* does not apply." *See id.* at 11.

or denied based on whichever party bears the greater weight of the *Cryo-Maid* factors."[121]

Additionally, the only "pending" non-Delaware action is the West Virginia Coverage Action, which was filed by ABDC but does not name any of the insurers in the Delaware actions.[122]  For *McWane* to apply, a prior pending action must involve, *inter alia*, "the same parties and the same issues."[123]  The West Virginia Coverage Action does not involve the same parties.  The Court therefore will evaluate the Motions under *Gramercy*'s "intermediate framework."

II.   **The *Cryo-Maid* factors weigh in favor of denying Defendants' *forum non conveniens* Motions and allowing these actions to proceed in Delaware.**

To reiterate, under *Gramercy*, the Court should exercise its discretion to dismiss or stay a Delaware action when an application of the *Cryo-Maid* factors favors that result. The six *Cryo-Maid* factors are:

> "(1) [t]he relative ease of access to proof; (2) the availability of compulsory process for witnesses; (3) the possibility of the view of the premises [sic], if appropriate; . . . (4) all other practical problems that would make the trial of the case easy, expeditious and inexpensive;" and (5) "whether or not the controversy is dependent upon the

---

[121] *GXP Cap., LLC*, 234 A.3d at 1194; *see also Gramercy Emerging Markets Fund*, 173 A.3d at 1044 ("[W]hen a case is later-filed and its predecessors are no longer pending, the analysis is not tilted in favor of the plaintiff or the defendant.  In that situation, Delaware trial judges exercise their discretion and award dismissal when the *Cryo-Maid* factors weigh in favor of that outcome.").

[122] Arrowood Answ. Br. at 10; National Union Answ. Br. at 8; American Alternative Answ. Br. at 8; XL Insurance Answ. Br. at 5; Hartford Insurance Answ. Br. at 9.

[123] *McWane Cast Iron Pipe Corp.*, 263 A.2d at 283.

application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction. A sixth [factor]—the pendency or nonpendency of a similar action in another jurisdiction—was added to the *Cryo-Maid* framework by subsequent decisions."[124]

Having evaluated each of those factors, the Court concludes they either favor continuing with the Delaware action or are neutral and therefore not relevant to the analysis.

## 1. The relative ease of access to proof factor weighs in favor of Delaware.

The access to proof factor weighs in Plaintiffs' favor. Nearly all witnesses for AmerisourceBergen are located in Pennsylvania.[125] All Plaintiffs are headquartered on the East Coast.[126] AmerisourceBergen is headquartered in Pennsylvania.[127] The insurance claims at issue arise out of national opioid litigation and insurance policies

---

[124] *Gramercy Emerging Markets Fund*, 173 A.3d at 1036-37 (quoting *Gen. Foods Corp. v. Cryo-Maid, Inc.*, 198 A.2d 681, 684 (Del. 1964)); *id.* at 1037 n.5.

[125] *See* American Alternative Answ. Br., Ex. D at 8-9 (noting in AmerisourceBergen's motion to stay in the California Coverage Action that ABC and ABDC both are incorporated in Delaware and have their principal places of business in Pennsylvania); *see also* Arrowood Am. Compl. ¶¶ 12-13 (noting that ABC and ABDC both are Delaware corporations with their principal places of business in Pennsylvania).

[126] *See* Arrowood Am. Compl. ¶¶ 11-17; National Union Compl. ¶¶ 8-9; American Alternative Compl. ¶¶ 15-18; XL Insurance Compl. ¶¶ 7-9; Hartford Insurance Compl. ¶¶ 8-13. AmerisourceBergen made a judicial admission in California that AmerisourceBergen and "**all** of the parties named in the Cross-Complaints" are headquartered on the East Coast. *See* Arrowood Answering Br., Ex. E at 11 (emphasis and underlining in original). The only party to the Delaware actions that is not headquartered on the East Coast is MWI Veterinary Supply, Inc., which is headquartered in Boise, Idaho. *See* Hartford Insurance Compl. ¶ 14.

[127] Arrowood Am. Compl. ¶¶ 12-13 (noting that ABC and ABDC both are Delaware corporations with their principal places of business in Pennsylvania); American Alternative Answering Br., Ex. D at 8-9 (noting in AmerisourceBergen's motion to stay in the California Coverage Action that ABC and ABDC both are Delaware corporations and have their principal places of business in Pennsylvania).

that were issued to AmerisourceBergen (and predecessor entities) in Pennsylvania, which is closer to Delaware than California. By proceeding with these cases in Delaware, Plaintiffs will have more efficient access to AmerisourceBergen's discovery. Conversely, AmerisourceBergen has not pointed to anything indicating its access to Plaintiffs' discovery will be limited by proceeding in Delaware.

## 2. The factors relating to availability of compulsory process and the possibility of viewing the premises do not favor either side.

For purposes of considering the availability of compulsory process, the Court evaluates whether "another forum would provide a substantial improvement as to the number of witnesses who would be subject to compulsory process."[128] The "moving party . . . must identify the inconvenienced witnesses and the substance of their testimony."[129] As the moving party, it is AmerisourceBergen's burden to demonstrate that another forum, particularly California or West Virginia, would subject more witnesses to compulsory process. AmerisourceBergen has not done so. Similarly, the third factor, which considers the possibility of viewing the premises, is not relevant to the current dispute.

---

[128] *Mt. Hawley Ins. Co. v. Jenny Craig, Inc.*, 668 A.2d 763, 769 (Del. Super. 1995) (citation omitted).

[129] *Id.*

### 3. Other practical problems that would make trial easy, expeditious, and inexpensive weigh in favor of Delaware.

Other practical issues weigh in Plaintiffs' favor and could make resolution of these disputes in Delaware more efficient and prompt. Preliminary dispositive issues could promptly resolve disputes regarding coverage in these actions. The parties are incorporated in Delaware, Pennsylvania, New Hampshire, or Connecticut.[130] Plaintiffs are not parties to the West Virginia Coverage Action,[131] which is still only in Phase I of litigation.[132] There is no imminent trial or near term resolution likely in West Virginia, and in any event that action does not involve the policies or Plaintiffs at issue in this case.[133] Accordingly, this factor weighs in favor of Delaware.

### 4. Whether or not the controversy is dependent upon application of Delaware law which the courts of Delaware more properly should decide weighs in favor of Delaware.

Delaware is "available to litigants [as] a neutral forum to adjudicate commercial disputes against Delaware entities, even where the dispute involves

---

[130] *See* Arrowood Am. Compl. ¶¶ 11-17 ("Arrowood is a Delaware corporation . . . ABC is a Delaware corporation . . . ABDC is a Delaware corporation . . . St. Paul . . . is organized under the laws of Connecticut . . . ACE . . . is organized under the laws of Pennsylvania."); National Union Compl. ¶ 8 ("National Union is a Pennsylvania corporation."); American Alternative Compl. ¶¶ 15-16 ("American Alternative Insurance Corporation is a Delaware corporation . . . North American Capacity Insurance Company is a New Hampshire corporation."); XL Insurance Compl. ¶ 7 ("XL Insurance America, Inc. is incorporated under the laws of Delaware."); Hartford Insurance Compl. ¶¶ 8-11 ("Hartford [Insurance] is a Connecticut corporation.").

[131] *See* Hartford Insurance Answ. Br. at 9; XL Insurance Answering Br. at 5; American Alternative Answ. Br. at 8; National Union Answ. Br. at 8; Arrowood Answ. Br. at 9-10.

[132] *See* Letter for Judicial Review in the Arrowood Action, Ex. A at 13 (D.I. 77).

[133] Arrowood Answ. Br. at 27 (citing Defs.' Mot. to Dismiss Arrowood Action at 10-11).

foreign law and the parties and conduct are centered in a foreign jurisdiction."[134]

Plaintiffs seek declarations that they have no duty to defend or indemnify AmerisourceBergen with respect to all Opioid Lawsuits, particularly all government lawsuits, including those filed by the State of West Virginia (the WVAG Action) and those filed by other West Virginia cities and counties.[135]

Although Pennsylvania law, rather than Delaware law, may apply to the policies at issue here,[136] that fact does not favor staying this case in favor of California or West Virginia. To the contrary, *ACE American Insurance Co. v. Rite Aid Corporation*, a recent Delaware Supreme Court decision, demonstrates that the application of Delaware law and Pennsylvania law are not in conflict in this area,[137] and that case applied Delaware law to a coverage action regarding a retail pharmacy's liability for prescription opioid claims.[138] Delaware is a proper forum to resolve a coverage dispute relating to a Delaware entity, and AmerisourceBergen

---

[134] *Candlewood Timber Grp. LLC*, 859 A.2d at 1000.

[135] *See, e.g.*, National Union Compl. ¶¶ 47-54 (asserting counts for declarations that National Union has no duty to defend or indemnify AmerisourceBergen for the Opioid Lawsuits).

[136] *See* Hearing Tr. at 91:8-20; *see also* Arrowood Answ. Br. at 16 (arguing Pennsylvania law or Delaware law should apply to the Arrowood Policies); National Union Answ. Br. at 25 (arguing Pennsylvania law should apply to the National Union Policies); American Alternative Answ. Br. at 31 (arguing Delaware law should apply to the American Alternative Policies absent a conflict of law); XL Insurance Answ. Br. at 19 (arguing Pennsylvania law or Delaware law should apply to the XL Insurance Policies).

[137] *ACE Am. Ins. Co.*, 270 A.3d at 244-45.

[138] *See id.* at 245 (applying Delaware law to the insurance coverage issues).

previously told the California court that Delaware is a more appropriate forum than California.[139]

### 5. The pendency or nonpendency of a similar action in another jurisdiction weighs in favor of Delaware.

The similar pending actions factor was added to the *Cryo-Maid* framework by later decisions.[140] "[T]he absence of a prior pending action in another jurisdiction 'is an important, if not controlling, consideration.'"[141] From a practical perspective, there is no pending action in another jurisdiction involving these parties and issues. The cross-claims in California were voluntarily dismissed without prejudice and are no longer pending there,[142] and St. Paul's contribution claims in the California Coverage Action similarly were dismissed without prejudice and are no longer pending.[143] The California proceeding, in its present posture, will not result in a coverage decision that is binding on AmerisourceBergen.

---

[139] *See* American Alternative Answ. Br., Ex. D at 8-9 (arguing in its motion that American Alternative has no connection to California; American Alternative is a Delaware corporation with its principal place of business in New Jersey; ABC and ABDC have no meaningful connection to California; ABC and ABDC are both incorporated in Delaware and have their principal places of business in Pennsylvania); *see also id.*, Ex. E at 8-9 (same, but with regard with XL Insurance); *id.*, Ex. H at 15 (arguing in AmerisourceBergen's motion that West Virginia, Pennsylvania, or Delaware "are far more suitable forums" than California for the policy coverage disputes).

[140] *See Gramercy Emerging Markets Fund*, 173 A.3d at 1037 (noting that this sixth factor was added to the *Cryo-Maid* framework by subsequent decisions).

[141] *Martinez v. E.I. DuPont De Nemours and Co., Inc.*, 82 A.3d 1, 34 (Del. Super. 2012) (citing *State Marine Lines v. Domingo*, 269 A.2d 223, 226 (Del. 1970)), *aff'd*, 86 A.3d 1102 (Del. 2014).

[142] *See* Arrowood Answ. Br. at 15; Defs.' Mot. to Dismiss Arrowood Action, Ex. O; National Union Answ. Br. at 12-13; American Alternative Answ. Br. at 11-12, Ex. J, Ex. K; XL Insurance Answ. Br. at 7; Defs.' Mot. to Dismiss XL Insurance Action, Ex. Q; Hartford Insurance Answ. Br. at 14, Ex. H, Ex. I.

[143] *See* Letter for Judicial Review in the American Alternative Action (D.I. 38) ("St. Paul has recently filed requests to dismiss all claims against the plaintiff insurers in the [California

For all the foregoing reasons, the *Cryo-Maid* factors weigh in favor of these actions proceeding in Delaware. The Court nevertheless remains sensitive to AmerisourceBergen's comity concerns and the existence of the anti-suit injunction in the West Virginia Coverage Action. The Court has no intention of usurping the West Virginia court's authority regarding the claims pending before it. This Court remains open to working with the parties and the West Virginia court as appropriate to fashion a scheduling order and discovery process that accords comity to the West Virginia court, uses the parties' resources as efficiently as possible, and avoids as much as possible the risk of inconsistent rulings.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss or Stay the actions are **DENIED**. **IT IS SO ORDERED**.

---

Coverage Action] and the plaintiff insurers have filed requests to dismiss all cross-complaint claims pending against St. Paul in California.").